**Ex parte TAYLOR.**

No. 27423.

District Court, D. California, S. D.

Aug. 15, 1947.

Edwin Wilson, of San Francisco, Cal., for petitioner.

Joseph Karesh, Asst. U. S. Atty., of San Francisco, Cal., for respondent.

GOODMAN, District Judge.

In his petition for the writ filed July 17, 1947, petitioner alleges that he is unlawfully restrained of his liberty by the Commandant of the United States Naval Disciplinary Barracks, Yerba Buena Island,

California, within the jurisdiction of this court. He alleges in the petition that he enlisted on August 23, 1938, in the Marine Corps for a period of four years and that his contract of enlistment expired on August 23, 1942. He further asserts that he was released from military service on or about March 10, 1943, and on that day became a civilian; that at the time of his release he was requested by the military authorities to re-enlist, but did not do so, and returned to his home in Fresno, California. It is further alleged in the petition that petitioner was taken into custody by the military authorities in 1947, was tried before a general Naval Court-Martial on July 1, 1947, on a charge of desertion on or about October 9, 1943, and that he is still kept in confinement by the respondent as a result of the judgment of the military court. It is further stated in the petition that on October 9, 1943, the date upon which he is charged with desertion, he was a civilian and hence the court-martial held in July, 1947, had no jurisdiction over him.

■ Upon the filing of the petition the court issued an order to show cause, and the respondent Commandant, in his return, presented to the court the record of the court-martial proceedings. Petitioner and his counsel were present upon the hearing of the order to show cause. It was agreed by both sides that the petition should be heard and determined upon the court-martial record, and the exhibits produced, thus satisfying the requirements which the Supreme Court prescribed in Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Hauck v. Hoyl, D.C., 51 F.Supp. 1005, 1007.

The facts as disclosed by the court-martial record and exhibits are these:

Petitioner enlisted on August 23, 1938, in the Marine Corps for a period of four years. On February 8, 1939, he deserted. On December 8, 1941, the United States declared a state of war with Japan, and, although actual hostilities have ceased, the state of war has not yet been lawfully terminated. On December 13, 1941, after the declaration of war, Congress passed 34 U.S.C.A. § 186, which provides as follows:

"In time of war all enlistments in the Regular Navy, Marine Corps, and Coast Guard, and in the Reserve components thereof as applicable, may be extended by the Secretary of the Navy for such additional time as he may deem necessary in the interest of national defense: Provided, That all men whose terms of enlistment are extended in accordance with the provisions of this section shall continue during such extensions to be subject in all respects to the laws and regulations for the government of the Navy: Provided further, That men detained in service in accordance with this section shall, unless they voluntarily extend their enlistments, be discharged not later than six months after the termination of the condition which originally authorized their detention."

Pursuant to the provisions of the Statute, the Secretary of the Navy, on December 15, 1941, promulgated Regulation 155, which reads as follows:

"Enlistments of men in Regular Navy, Marine Corps, and Coast Guard who do not voluntarily extend or re-enlist and all enlistments of men in Reserve components thereof are hereby extended in accordance with Act approved December 13, 1941 for a period not later than six months after termination of war. Men so detained are not entitled to enlistment allowance. No change in present law governing payment enlistment allowance men who voluntarily reenlist or extend enlistment in Regular Navy, Marine Corps, and Coast Guard. Provisions section 1422 Revised Statutes [34 U.S.C.A. § 201] suspended effective December 13, 1941."

On January 26, 1943, petitioner having been in desertion since February 8, 1939, surrendered to the Naval authorities. On March 6, 1943, petitioner was in confinement by the military upon charges of desertion as a result of his desertion of February 8, 1939. On that day, that is, March 6, 1943, the Headquarters of the United States Marine Corps in Washington, D. C., issued the following directive or order to

the Commandant of the Marine Base at San Diego, where the petitioner was in confinement:

In substance, this directive stated:

"Re the Case of Floyd Richard Taylor, 267388, formerly Private United States Marine Corps Deserter and endorsements, thereon, Authority is granted to effect the reenlistment of this man for a period of four years. Inform this office by airmail of the date enlistment is effected in order that discharge from prior enlistment may be prepared and forwarded discharge to be effected as of date prior to date of reenlistment."

On March 10, 1943, four days later, the Commanding Officer, Guard Batallion, Marine Corps, San Diego, California issued the following directive or order:
"From: The Commanding Officer.
"To: The Base Prison Officer.
"Subject: Request for release.

"1. It is requested that the below named man be released from confinement and restored to duty this date.

"Floyd Richard Taylor.

"Note: Charges dropped and will be reenlisted.

"W. Pince
"1st Lt., U.S. Marine Corps
by direction."

On March 10, 1943, the petitioner was released from actual custody, given his own civilian clothes and instructed to reenlist at the base. He failed to do so, however. Instead he departed for Fresno, his home. Shortly after arriving there, he registered with his local draft board.

Later, on April 19, 1943, petitioner returned to the Naval Base at San Diego and reported to the Naval authorities, who took him into custody. On July 20, 1943, he was tried at San Diego by general court-martial on a charge of absence from duty without leave, and sentenced to serve five years' imprisonment. On September 15, 1943, the Secretary of the Navy suspended the sentence, restored the petitioner to duty, and placed him on one year's probation. However, he again deserted on October 9, 1943, returned to Fresno, and there, for a considerable period of time, followed his occupation. He was apprehended by the civil authorities in Fresno on April 4, 1947, turned over to the military and was tried by general naval court-martial July 1, 1947, on charge of desertion in war time, that is as of October 9, 1943, and was thereafter sentenced to 6½ years' imprisonment and to be dishonorably discharged from the Marine Corps.

Petitioner claims here, as he did before the courtmartial, which overruled him on that point, that he was restored to civilian status on March 10, 1943, and hence thereafter the Navy had no longer jurisdiction over him.

The agreed issue is: Was the petitioner restored to civilian status on or about March 10, 1943? If he was, the Naval court-martial had no jurisdiction and the writ should issue; if he was not, the petition should be denied.

It is not inappropriate to state that the case is one of first impression under Section 186 of 34 U.S.C.A.

The purpose of Section 186, which is as I have already stated, the Congressional enactment extending enlistments of men in the armed forces at the time of the declaration of war, is clear. Being at war, Congress determined that the need for trained naval personnel was great. Consequently, the Secretary of the Navy was empowered to retain all enlisted personnel regardless of the period of time of original enlistment, until six months after the termination of the emergency. Provision for voluntary reenlistment was made, both in the Statute and in the Secretary's Regulation promulgated under the authority of the statute. But this does not mean that members of the armed forces had a unilateral option to be either discharged from the Service or to voluntarily reenlist. Voluntary reenlistment by the statute was made a condition precedent to waiver of statutory extension of enlistment. This is made quite clear in the language of the statute, itself. I again call attention to that portion of the statue which reads:

"Men detained in service in accordance with this section shall, unless they voluntarily extend their enlistments, be discharged not later than six months after the

termination of the condition which originally authorized their detention"—namely, the state of war.

Likewise, it is well again to advert to the language contained in the Secretary's Regulation, wherein it is stated:

"Enlistments of men in Regular Navy, Marine Corps, and Coast Guard, who do not voluntarily extend or reenlist, and all enlistments of men in the Reserve components thereof are hereby extended," in accordance with the statute to which I have just referred.

The privilege extended by the statute and reaffirmed in the Secretary's Regulation was to voluntarily reenlist in lieu of the statutory extension of enlistment. By this privilege, pay benefits due to length of service, which would otherwise not be available, inured to the benefit of the enlisted personnel, as well as other benefits not necessary to be enumerated here.

Although not argued, it was claimed at the hearing that Section 186 of 34 U.S.C.A. is unconstitutional. This contention requires but brief comment. The statute springs from the Congressional power to compel military service, and is valid. Constitution, Article 1, Section 8; Selective Draft Law Cases (Arver v. United States), 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A. 1918C, 361, Ann.Cas. 1918B, 856; Local Draft Board No. 1 v. Connors, 9 Cir., 124 F.2d 388.

The directive of Marine Headquarters, to which I have referred, and the Base Commandant's Order of March 10th did no more than to extend the privilege of voluntary reenlistment to the petitioner Taylor. Unless he did voluntarily reenlist, his enlistment was statutorily extended. He did not voluntarily reenlist, and so he still remained in the armed forces by virtue of the statute and the Secretary's Promulgation No. 155.

What happened on March 10th may be very simply stated. Petitioner was in custody on the charge of desertion. The authorities decided that because of circumstances not disclosed in the record he should be restored to duty and be allowed to avail himself of the privilege of reenlistment rather than to have his enlistment automatically extended. Orders to that effect were issued in Washington and carried out by the Commandant at San Diego. Petitioner was released from custody. He was not discharged from the service on that day. He did not avail himself of the opportunity and privilege to reenlist and thus retain for himself benefits which could not have been had by him had his enlistment been automatically extended. Instead, however, he departed for his home in Fresno.

Mention was made at the hearing that petitioner's civilian clothes were given to him on release from custody on March 10, 1943. This, it is asserted, is some evidence tending to prove he was discharged from the service. While this might be considered as an incident to an actual discharge, it obviously is not evidence of discharge.

The record fails to show any evidence whatever that petitioner was discharged from service on March 10, 1943. To the contrary, the court-martial record and the exhibits disclose without question that petitioner was not discharged from the armed forces on March 10, 1943, or thereabouts.

It is not unfair to say that counsel, in the opinion of the court, confuses the petitioner's release from custody on March 10th with a discharge from military service.

It is the opinion of the court that the petitioner was on March 10, 1943, and has been continuously since that time, a member of the Marine Corps, subject to all the laws, rules and regulations governing its conduct.

Therefore, the order to show cause will be discharged and the petition will be denied.

The court wishes to add the following comment:

While what the court may now say may and probably will not have any particular effect upon the military authorities, I am of the opinion that the petitioner was not what might be termed a classic type of deserter. Although his theory that he was entitled to do what he pleased on the ground he was a civilian, or became a civilian on March 10, may be said to be

fanciful, nevertheless he openly proceeded upon that theory. There is, therefore, absence of the kind of intent of a criminal nature with which we have to deal in the administration of the criminal process. In addition, it well may be that petitioner's motivation was in part due to his dependency obligations. Consequently, looking at the case from the point of view of the civil courts, I am of the view that the sentence imposed by the court-martial was unduly harsh. Therefore, in the event the petitioner desires to apply for executive clemency, he may in support of such petition, for what it is worth, make use of the statement of the court in this regard.